## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                    Case No. 13-11319-WRS
                                                         Chapter 13
WILLIAM HENRY FEGGINS,

      Debtor

WILLIAM HENRY FEGGINS,

      Plaintiff                               Adv. Pro. No. 14-1049-WRS

  v.

LVNV FUNDING LLC and
RESURGENT CAPITAL
SERVICING L.P.,

      Defendants

### <u>MEMORANDUM DECISION</u>

These consolidated Adversary Proceedings came before the Court for trial on August 10,

2015.  The Plaintiffs were present by counsel Nicholas H. Wooten and the Defendants were

present by counsel Neal D. Moore, III, and Tina Lam.  For the reasons set forth below, judgment

is entered in favor of the Plaintiffs and against the Defendants.


## I.  FACTS

This litigation is a consolidation of five adversary proceedings.  The Plaintiffs are

William Henry Feggins (AP 14-01049), Ray C. Balcom (AP 14-01060), Donnie L. Chandler (AP

14-01062), Cynthia Gamble Grant (AP 14-01063), and Robert W. Henson (AP 14-01064).[1]  Each

of the Plaintiffs is a debtor in Chapter 13 bankruptcy.  The Plaintiffs assert violations of the Fair

---

[1]  Except where specifically indicated, the plaintiffs will be referred to collectively in this opinion as "the Plaintiffs."

Debt Collection Practices Act ("FDCPA") against Defendants LVNV Funding, LLC, and Resurgent Capital Services, L.P. (collectively "the Defendants"), alleging that the Defendants filed proofs of claim on time-barred debts in their respective bankruptcies.[2]

At trial the Court heard testimony from eight witnesses: Chapter 13 Trustee Curtis C. Reding; Plaintiffs Feggins, Henson, Chandler, and Grant; attorneys Christopher Stanfield and Rafael Gil, III; and Lisa Landreth, an employee of Defendant Resurgent Capital Services, L.P.[3] There is no dispute that the proofs of claim filed by the Defendants were all for time-barred debts.  Moreover, it is apparent from a review of the claims at issue that the time-barred status of the underlying debts could be determined from the face of the claims.

At trial the Defendants filed two virtually identical motions for judgment on partial findings, one after the Plaintiffs' case-in-chief and the other after their own case-in-chief.  (Docs. 62, 65); *see* FED. R. CIV. P. 7052(c) (as incorporated by FED. R. BANKR. P. 7052).  The Court will address these motions simultaneously, and will occasionally find it necessary to refer to two of its prior rulings in this litigation.[4]

---

[2]  Feggins also individually objected to the Defendants' proof of claim in his adversary proceeding.  *See* FED. R. BANKR. P. 3007(b); (Case No. 13-11319, Claim 17).  The Court will sustain his objection.  *See* 11 U.S.C. § 502(b)(1).

[3]  Christopher Stanfield is Feggins's counsel in his underlying bankruptcy case.  Rafael Gil, III is Balcom's, Chandler's, Grant's, and Henson's counsel in their underlying bankruptcy cases.

[4]  On December 16, 2014, the Court denied the Defendants' motion to reconsider its denial of their motion to dismiss or stay proceedings under the "first-filed rule."  (Doc. 33).  The Court will refer to this opinion as "Feggins I."  2014 WL 7185376 (Bankr. M.D. Ala. Dec. 16, 2014).  On August 25, 2015, the Court issued an opinion explaining its earlier denial of the Defendants' motion for judgment on the pleadings.  (Doc. 67).  The Court will refer to this opinion as "Feggins II."  535 B.R. 862 (Bankr. M.D. Ala. 2015).

2

## II.  ANALYSIS

### A.  Jurisdiction and Adjudicatory Power

This Court has "related to" jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b), and the District Court's General Order of Reference dated April 25, 1985.  Feggins's objection to claim is a core proceeding on which this Court may enter a final order.  28 U.S.C. § 157(b)(2)(B).  The Plaintiffs' FDCPA claims are non-core.  *See* Avalos v. LVNV Funding, LLC (In re Avalos), 531 B.R. 748, 750 (Bankr. N.D. Ill. 2015).

A bankruptcy court may enter a final order in a non-core proceeding with consent of the parties.  Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1947-48 (2015); 28 U.S.C. § 157(c)(2).  This consent need not be express, but must "be knowing and voluntary."  Wellness Int'l Network, 135 S. Ct. at 1948.  "[T]he key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator."  Id. (quoting Roell v. Withrow, 538 U.S. 580, 590 (2003)).

The Defendants have not expressly consented to adjudication, but their consent may be implied from the course of their conduct in this litigation.  The Defendants have repeatedly moved for entry of judgment in their favor on numerous grounds.  (Docs. 5, 16, 21, 32, 39, 51, 62, 63, 65).  Yet nowhere in this mass of filings have the Defendants suggested they seek anything other than a final judgment in their favor, or that they do not consent to adjudication in this Court.  Based upon these filings, the Court concludes that the Defendants have consented to entry of a final judgment by a bankruptcy court.

3

**B.  The Court Will Not Dismiss Balcom's Case Despite His Failure to Appear at Trial**

The Defendants moved to dismiss the adversary proceeding of plaintiff Ray Balcom for his failure to appear at trial.  (Doc. 63).  The Defendants served a subpoena on Balcom, but he did not appear for trial notwithstanding the fact that neither the Court nor the Defendants excused his appearance.  While Balcom's lawyer advised the Court at the pre-trial conference that he might have difficulty obtaining Balcom's presence at the trial, a formal motion to quash the subpoena or to excuse his appearance was not filed.  The Court would have preferred that Balcom file a written motion supported by an affidavit setting out the reasons for his non-appearance.  While the path chosen by Balcom here is not ideal, the Court will not dismiss his claim for the following reasons.

First, Balcom's testimony was unnecessary to prove his own case-in-chief because his counsel submitted documents raising a prima facie violation of the FDCPA.  *Infra* Part II(C).  Second, the other Plaintiffs testified at trial, and the Court infers that Balcom would have testified substantially as they did.  Third, and most importantly, it is clear from the Defendants' examination of the other Plaintiffs that the Defendants wanted Balcom's testimony to support their contention that he was not misled or harmed in any way and that there was no violation of the FDCPA.  However, FDCPA claims are decided under an objective standard and Balcom's subjective testimony would have been unnecessary and irrelevant.  *Infra* Part II(C).  The Defendants articulated no persuasive reason for why Balcom's testimony would have been probative of any issue at trial.  Therefore, the Court will not dismiss Balcom's case for his non-compliance with the Defendants' subpoena.

### C.  The Plaintiffs Established Prima Facie Violations of the FDCPA

The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  It also prohibits debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  With exceptions inapplicable here, the FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  This definition also "includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."  15 U.S.C. § 1692a(6).

A debt collector who files a proof of claim in bankruptcy on a facially time-barred debt deceptively, unfairly, and unconscionably attempts to collect a debt in violation of §§ 1692e and 1692f of the FDCPA.  Crawford v. LVNV Funding, LLC (In re Crawford), 758 F.3d 1254, 1261 (11th Cir. 2014), *cert. denied sub nom.* LVNV Funding, LLC v. Crawford, 135 S. Ct. 1884 (2015).  Such activity takes advantage of bankruptcy's automatic claims allowance process and forces debtors, trustees, and courts to spend time and resources finding, objecting to, and disallowing their claims; otherwise the stale claims will be paid at the expense of either the debtor or other creditors.[5]  Id. at 1259, 1261; *see also* Feggins II, 535 B.R. at 868-69.  When

---

[5]  Chapter 13 Trustee Curtis Reding testified that his office processes between 6,000 and 7,000 claims each month, and that there are between 18,000 and 19,000 pending Chapter 13 cases in this district.  (Doc. 74, pp. 28 and 39).  Thus, it is easy to imagine time-barred claims getting lost in the shuffle.  *See* Feggins II, 535 B.R. at 869 ("A debt collector who files a proof of claim on a debt it knows to be unenforceable unfairly games the system by taking advantage of

5

evaluating a claim under §§ 1692e or 1692f, the Court must use the "least-sophisticated consumer standard." Crawford, 758 F.3d at 1258-59. "The inquiry is not whether the particular plaintiff-consumer was deceived or misled; instead, the question is 'whether the "least sophisticated consumer" would have been deceived' by the debt collector's conduct."[6] Id. at 1258 (quoting Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1173 (11th Cir. 1985)). The FDCPA is a "strict liability" statute that is subject to the affirmative defense of a debt collector's "bona fide error." Id. at 1259 n.4 (citing 15 U.S.C. § 1692k(c)).

The Plaintiffs entered into evidence one or more claims that were filed by the Defendants in each of their cases. Each of these claims was for debts purportedly owed to entities other than the Defendants; thus, the Court finds that the Defendants were debt collectors within the meaning of the FDCPA. See 15 U.S.C. § 1692a(6). In addition, each of these claims was clearly filed more than six years after the underlying debt was charged off, rendering them "unenforceable" under Alabama law and subject to disallowance under the Bankruptcy Code. See ALA. CODE § 6-2-34(5) and (9); 11 U.S.C. § 502(b)(1); see also Feggins II, 535 B.R. at 867 ("It is well

---

the automatic claims process in bankruptcy and camouflaging among the innundation of other claims filed. It is wrongfully asserting that it should be paid . . . and is basing that assertion on the opportunity to slip past the bankruptcy court's supervision unnoticed.") (internal citation omitted).

[6] The Defendants argue that this Court should apply a more burdensome "competent attorney" standard because each of the Plaintiffs were represented by counsel in their bankruptcy cases. The Court acknowledges that the Eleventh Circuit has questioned whether the "least-sophisticated consumer" standard should apply when the debt collection activity is directed to a consumer's attorney. See Miljkovic v. Shafritz & Dinkin, P.A., 791 F.3d 1291, 1306 n.10, 1308 n.12 (11th Cir. 2015). However, as this Court noted in Feggins II, the Eleventh Circuit did not decide the issue in Miljkovic, and it applied the "least-sophisticated consumer" standard in Crawford despite the fact that the plaintiff/debtor in that case had been represented by counsel. Feggins II, 535 B.R. at 875-76 (citing Crawford, 758 F.3d at 1258-59).

6

established that  a claim that is barred by statute of limitations under applicable law will be disallowed. . . .").

The Defendants suggested at trial that Balcom, Henson, Chandler, and Grant would not have been affected by making payments on the Defendants' stale claims because they had proposed what are known as "POT" (payment-over-time) plans.  (Doc. 74, pp. 34-37).  In a "POT" plan, a Chapter 13 debtor proposes to pay unsecured creditors a fixed amount of money regardless of the number of creditors or the amount of allowed claims exceeding that "POT"; thus, the Defendants posit that payment of their stale claims would not have affected the Plaintiffs' overall payment amount.

However, the purpose of the FDCPA is not merely to protect consumers, but also to "eliminate abusive debt collection practices" and to ensure "that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged[.]" 15 U.S.C. § 1692(e).  In other words, the FDCPA protects other creditors as well as consumers, and payment of stale claims via "POT" plans reduces the amount paid to creditors holding valid claims.  *See* Feggins II, 535 B.R. at 869 ("A creditor's lot in bankruptcy is famine, not feast, because the debtor's insolvency usually means that there will not be enough assets to make all of the creditors whole.  A creditor who obtains payment via an undeserving proof of claim exacerbates this problem and undermines one of bankruptcy's key purposes by parasitically diluting the already meager shares of deserving creditors still further.").

Payment of stale debts in "POT" plans may harm the debtor as well because Chapter 13 cases have a high rate of dismissal.  "In light of the real risk that a plan will not be completed, leaving the debtor liable on the prepetition claims, the debtor has a legitimate interest in seeing

7

that only valid claims (to which he or she has no defense) are paid by plan distributions." In re Freeman, — B.R. —, 2015 WL 6735395, *3 (Bankr. E.D. Pa. Nov. 4, 2015).  The Court rejects the Defendants' suggestion that the "POT" characteristic of Balcom's, Henson's, Chandler's, and Grant's Chapter 13 plans defeats their FDCPA claims.[7]

The Defendants also elicited testimony and introduced evidence to the effect that many of the time-barred debts at issue were not listed on the Plaintiffs' bankruptcy schedules.  The Defendants imply that the filing of their stale claims actually assisted the Plaintiffs in discharging these debts by bringing them to their attention because unscheduled debts might not be discharged.  See 11 U.S.C. § 523(a)(3)(A).  While the Court agrees that the prudent course for debtors would be to list time-barred debts in their schedules with a notation that they are time-barred, the Court rejects the Defendants' suggestion that these debts would have escaped discharge because the Defendants had actual knowledge of the Plaintiffs' bankruptcy cases, rendering 11 U.S.C. § 523(a)(3)(A) inapplicable.

In light of the foregoing, the Plaintiffs established a prima facie case that the Defendants violated the FDCPA by filing their stale claims.  The Plaintiffs do not contend that they suffered any actual damages, but the FDCPA provides for statutory damages of up to $1,000 plus reasonable attorney's fees.  15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(3).

### D.  The Defendants Have Not Established a "Bona Fide Error" Defense

Having concluded that the Defendants' conduct violated §§ 1692e and 1692f of the FDCPA, as interpreted in Crawford, the Court next considers whether the "bona fide error"

---

[7]  The Court also notes that the fact that debtor in Crawford confirmed a "POT" plan did not trouble the Eleventh Circuit when it held that filing stale claims violated the FDCPA.

8

defense applies.  "A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  A defendant asserting a bona fide error defense must prove that its violation of the FDCPA "(1) was not intentional; (2) was a bona fide error; and (3) occurred despite the maintenance of procedures reasonably adapted to avoid any such error."  Edwards v. Niagara Credit Solutions, Inc., 584 F.3d 1350, 1352-53 (11th Cir. 2009).

The Defendants did not prove any of the three elements necessary for a bona fide error defense.  Lisa Landreth, a manager for Resurgent Capital who oversees its department that files bankruptcy claims, testified as follows:

> Q: . . . [W]ould you please tell the Court Resurgent's practice if a debtor was in bankruptcy but had an account that was older than the statute of limitations to file suit.
>
> A.  We file proof of claims on out-of-statute accounts based on the Bankruptcy Code which allows us to do so.

(Doc. 74, pp. 151-52).  Landreth further testified that Resurgent does not file time-barred claims in Wisconsin, Mississippi, or North Carolina because under the law in those States the debt is "extinguished" once the limitations period expires, but that Alabama has no such law.  (Doc. 74, p. 152).  Finally, Landreth testified that prior to the Crawford decision the FDCPA was not a consideration in Resurgent's practice of filing stale claims, and that Resurgent has stopped filing stale claims in the Eleventh Circuit's territory (Alabama, Florida, and Georgia) since the Crawford decision was released.  (Doc. 74, p. 152-54).

9

The Defendants cannot meet the first element, that their violations of the FDCPA were unintentional, because Landreth testified that they intentionally file stale proofs of claim in bankruptcy.  *Cf.* Edwards, 584 F.3d at 1353 (holding that a debt collector who intentionally violated one provision of the FDCPA to avoid the possibility of violating a different provision could not establish the first element of the bona fide error defense).  However, §§ 1692e and 1692f prohibit the filing of proofs of claim in Chapter 13 bankruptcy on time-barred debt. Crawford, 758 F.3d at 1261.

Likewise, the Defendants cannot prove the second element, that their error was bona fide. "As used in the [FDCPA] 'bona fide' means that the error resulting in a violation was 'made in good faith; a genuine mistake, as opposed to a contrived mistake.'" Edwards, 584 F.3d at 1353 (quoting Kort v. Diversified Collection Servs., Inc., 394 F.3d 530, 538 (7th Cir. 2005)).  "To be considered a bona fide error, the debt collector's mistake must be objectively reasonable."  Id. Landreth testified that when the Defendants filed their stale proofs of claim they were unaware that the FDCPA prohibited their activity.  However, the bona fide error defense may not be asserted for a mistaken legal interpretation of the FDCPA.  Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 577 (2010).

Landreth also testified that the Bankruptcy Code "allows" creditors (and debt collectors) to file stale proofs of claim, but that the Defendants do not file stale proofs of claim in certain States because their laws extinguish debts upon the expiration of a statute of limitations; the obvious inference is that the Defendants believe § 501(a) of the Bankruptcy Code provides them an absolute right to file stale proofs of claim so long as the underlying debt is not

10

"extinguished."[8]  This Court recently rejected a similar argument as grounds for a bona fide error

defense in a case with identical facts to this one.  *See* <u>Holloway v. Am. Infosource, L.P. (In re</u>

<u>Holloway)</u>, 538 B.R. 137, 142-44 (Bankr. M.D. Ala. 2015).  First, the Court disagrees that §

501(a) of the Bankruptcy Code provides creditors an impenetrable shield against liability when

their proofs of claim violate another statute or rule.  *Infra*, Part II(E)(2); *see* <u>Feggins II</u>, 535 B.R.

at 866-67, 870; *see also* <u>Matter of Sekema</u>, 523 B.R. 651, 654-55 (Bankr. N.D. Ind. 2015)

(imposing sanctions under Bankruptcy Rule 9011 for stale proofs of claim); *cf.* <u>McLean v. Green</u>

<u>Point Credit, LLC (In re McLean)</u>, 794 F.3d 1313, 1322-23 (11th Cir. 2015) (proof of claim on

discharged debt violated discharge injunction); <u>Maddox v. Capital One, N.A. (In re Maddox)</u>,

530 B.R. 889, 892 (Bankr. M.D. Ala. 2015) (same).

Second, the Court is unimpressed with the Defendants' distinction of time-barred debts

that are not "extinguished" from time-barred debts that are.[9]  "A proof of claim is a creditor's

statement of its entitlement to distribution from the bankruptcy estate.  However, a proof of claim

will be disallowed when the underlying debt is time-barred because a creditor is not entitled to

distribution on such a claim."  <u>Holloway</u>, 538 B.R. at 143 (citing 11 U.S.C. § 502(b)(1)).  In

bankruptcy it is irrelevant whether the underlying debt of a stale proof of claim is extinguished

by state law or not because either way the time-barred debt is unenforceable under 11 U.S.C. §

502(b)(1) and not entitled to distribution.  It follows that a "creditor who files a proof of claim

---

[8]  Section 501(a) of the Bankruptcy Code provides that a creditor "may file a proof of claim."

[9]  In Alabama, partial payment of a debt that is already time-barred does not lift the limitation on enforcement of that debt.  ALA. CODE § 6-2-16; *see also* <u>Chapman v. Barnes</u>, 9 So. 589, 590 (Ala. 1891).  Therefore, the Defendants' distinction between limitation and repose seems to make a mountain out of a molehill.

11

that is based on a debt the creditor knows . . . is time-barred is effectively making a false assertion to the bankruptcy court that it is entitled to distribution from the bankruptcy estate." Holloway, 538 B.R. at 143.  This is because such conduct "unfairly games the system by taking advantage of the automatic claims allowance process in bankruptcy and camouflaging among the inundation of other claims filed." Feggins II, 535 B.R. at 869.  In short, the Defendants did not act in good faith by filing their stale claims and their violations of the FDCPA were not bona fide.

Finally, the Defendants cannot meet the third element of having procedures adapted to avoid the errors.  "[T]he procedures component of the bona fide error defense involves a two-step inquiry." Owen v. I.C. Sys., Inc., 629 F.3d 1263, 1273-74 (11th Cir. 2011) (internal quotation marks omitted).  "The first step is whether the debt collector 'maintained' – *i.e.*, actually employed or implemented – procedures to avoid errors." Id. at 1274 (internal quotation marks omitted).  "The second step is whether the procedures were 'reasonably adapted' to avoid the specific error at issue." Id. (internal quotation marks omitted).  The procedures element "is a uniquely fact-bound inquiry susceptible of few broad, generally applicable rules of law." Id. at 1277.

Here, the Defendants cannot meet even the "low threshold required by the first step" because, based on Landreth's testimony, their procedures were designed to commit FDCPA violations, not prevent them.  *See* id. at 1274.  Even if the Defendants had a procedure in place to not file stale proofs of claims, it would fail the "reasonably adapted" step.  "[T]he FDCPA does not require debt collectors to independently investigate and verify the validity of a debt to qualify for the bona fide error defense." Id. at 1276.  "However, to qualify for the bona fide error

12

defense, the debt collector has an affirmative statutory obligation to maintain procedures reasonably adapted to avoid readily discoverable errors. . . ." Id. at 1276-77 (citing 15 U.S.C. § 1692e(2)(A), which prohibits the false representation of the character or legal status of any debt). The proofs of claim at issue list on the face of the documents information required by Bankruptcy Rule 3001(c)(3)(A) from which the Defendants could have readily determined that the underlying debts were time-barred. *Cf.* id. 1275 (rejecting bona fide error defense because excessive interest charges were discernable from the face of the documents). The Defendants' post-Crawford halt of their activities is equally insufficient. "Congress designed the FDCPA to prevent debt collection abuses, not to furnish debt collectors with a free pass as to errors in their first collection attempts." Id. at 1275; *see also* Reichert v. Nat'l Credit Sys., Inc., 531 F.3d 1002, 1007 (9th Cir. 2008) (debt collectors "are not entitled under the FDCPA to sit back and wait until a creditor makes a mistake and then institute procedures to prevent a recurrence"). In other words, to qualify as preventative the procedures must be proactive, not reactive.

The facts here are simple and undisputed. The Defendants, as a matter of practice and policy, filed stale proofs of claim in bankruptcy court in violation of the FDCPA. They did so intentionally, in bad faith, and with no procedures in place that were reasonably adapted to prevent FDCPA violations. The bona fide error defense is not available to them.

### E.  The Defendants' Rule 52 Motions

"If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. . . .  A judgment on partial findings must be supported by findings of fact

and conclusions of law as required by Rule 52(a)."  FED. R. CIV. P. 52(c), as incorporated by

FED. R. BANKR. P. 7052.

The Defendants' Rule 52 motions raise numerous legal arguments, most of which the

Court has already rejected in this litigation.[10]  *See* Feggins II, 535 B.R. at 870, 875-76 (rejecting

the Defendants' preclusion argument and their direct attacks on Crawford); Feggins I, 2014 WL

7185376 at *2-3 (rejecting the Defendants' "first-filed rule" argument).  However, the

Defendants raise two novel arguments: (1) that Crawford should not be applied retroactively, and

(2) that Chandler's, Grant's, and Balcom's claims are barred by res judicata.  The Court will

quickly run through the old arguments and then address the new ones.

### 1.  The First-Filed Rule Does Not Apply

The Defendants posit that the first-filed rule bars the Plaintiffs from proceeding

individually in this Court because a prior Crawford-type suit asserting a putative nationwide class

was filed against the Defendants in the Southern District of Alabama ("the *Brock* class action").

"The first-filed rule provides that when parties have instituted competing or parallel litigation in

separate courts, the court initially seized of the controversy should hear the case."  Collegiate

Licensing Co. v. Am. Casualty Co., 713 F.3d 71, 78 (11th Cir. 2013).  The Defendants assert that

---

[10]  Defendants' counsel have rehashed the arguments addressed by the Court in Feggins II
as their motions were filed prior to the release of that opinion.  However, the Court rejected the
Defendants' "first-filed rule" argument in Feggins I long before these motions were filed.  *See*
Feggins I, 2014 WL 7185376 at *3 (referring to the Defendants' "machinations" as
"disingenuous").  That counsel for the Defendants have now asked this Court to rule on this issue
a third (and fourth) time will be noted when the Court considers how much to award the
Plaintiffs in attorney's fees.

14

under Rule 23(c)(2)(B) the Plaintiffs are necessarily part of the *Brock* class action because no

class has been certified and the Plaintiffs have not had an opportunity to opt out.[11]

As the Court has explained, "one may not get off the bus until one has first gotten on,

[and] one may not opt out of a class until it is first certified." Feggins I, 2014 WL 7185376 at *2.

Rule 23(c)(2)(B) is intended to ensure that potential members of a certified class have notice of

the class action suit and of their rights under that suit, including the right to opt out of the class.

It does not fetter individual litigants to a class action they have no wish to be part of simply

because the class action was filed first and purports to be nationwide; to hold otherwise is

something less than fair play.  The Defendants' argument distorts the meaning and purpose of

Rule 23(c)(2)(B), and their assertion of the first-filed rule falls flat.[12]

### 2.  The Bankruptcy Code Does Not Preclude the FDCPA

The Defendants assert that the Plaintiffs' FDCPA claims are precluded by § 501(a) of the

Bankruptcy Code because, as interpreted in Crawford, the FDCPA "irreconcilably conflicts" with

a creditor's right to file a proof of claim.  *See also* Johnson v. Midland Funding, LLC, 528 B.R.

462, 470-71 (S.D. Ala. 2015).  "The courts are not at liberty to pick and choose among

congressional enactments, and when two statutes are capable of co-existence, it is the duty of the

courts, absent a clearly expressed congressional intention to the contrary, to regard each as

effective." Morton v. Mancari, 417 U.S. 535, 551 (1974).  There can only be an irreconcilable

---

[11]  Rule 23(c)(2)(B) is incorporated by FED. R. BANKR. P. 7023.

[12]  The Court also notes that the *Brock* class action has now been dismissed with prejudice.  14-cv-00324, Doc. 55.  Just as the Plaintiffs were not chained to the *Brock* class action by some negative implication of Rule 23(c)(2)(B), they are not defeated by the dismissal of the *Brock* class action.

15

conflict if the Bankruptcy Code provides creditors an absolute right to file proofs of claim with impunity, even if the filing violates another law or rule; otherwise any conflict with the FDCPA is not irreconcilable.  Quite clearly § 501(a) of the Bankruptcy Code does not immunize creditors from liability when they file an offensive proof of claim.  *E.g.*, <u>McLean</u>, 794 F.3d at 1322-23; *see also* FED. R. BANKR. P. 9011(b).  Section 501(a) provides an open-ended right to file a proof of claim, not an impregnable right to file one.  <u>Feggins II</u>, 535 B.R. at 869-70.

There is no repeal by implication when a broad and open-ended authorization "conflicts" with a narrow prohibition, as the Bankruptcy Code and the FDCPA allegedly do here.  <u>Id.</u> at 870, 874-75; *see also* <u>POM Wonderful LLC v. Coca-Cola Co.</u>, 134 S. Ct. 2228, 2238-39 (2014) (holding that the broad labeling authorization of the Food, Drug, and Cosmetic Act did not preclude a Lanham Act claim based on misleading labeling).  The two statutes are capable of co-existence and can each be given effect; thus, the Bankruptcy Code authorizes creditors to file proofs of claim, subject to the FDCPA's narrow restriction on the filing of stale proofs of claim by debt collectors.  <u>Feggins II</u>, 535 B.R. at 875.  Because there is no irreconcilable conflict, the Bankruptcy Code does not repeal the FDCPA by implication.  <u>Id.</u>  Since there is also no express conflict, the Defendants' preclusion argument fails.[13]

---

[13]  The Court acknowledges that its preclusion analysis in <u>Feggins II</u> has been criticized by other courts in the Eleventh Circuit.  *See* <u>Lewis v. LVNV Funding, LLC (In re Lewis)</u>, 2015 WL 5819992, *6 n.2 (S.D. Fla. Oct. 6, 2015) (following <u>Johnson</u>); *cf.* <u>Jenkins v. Credit Mgmt., Inc. (In re Jenkins)</u>, 538 B.R. 129, 135-36 (Bankr. N.D. Ala. 2015) (concluding that 11 U.S.C. § 501(a) absolutely allows stale proofs of claim).  The Court has reviewed these cases and does not find them persuasive.

16

### 3.  Legal Conclusions in *Crawford* are Binding on This Court

The Defendants also rehash their less meritorious arguments that the Court addressed in Feggins II: (1) Crawford is not a binding opinion because it decided a motion to dismiss, (2) the bankruptcy estate is not a "consumer" or "natural person," (3) the "competent attorney" standard should apply, (4) the proofs of claim are not deceptive, unfair, or unconscionable, and (5) debtors act "inequitably" by filing bankruptcy and alleging FDCPA claims when debt collectors file stale proofs of claim.

Published opinions by the Eleventh Circuit and the legal interpretations therein are binding on bankruptcy courts within the Eleventh Circuit.  *See* Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).  In Crawford, the Eleventh Circuit interpreted §§ 1692e and 1692f of the FDCPA as prohibiting debt collectors from filing proofs of claim on time-barred debts.  Crawford, 758 F.3d at 1261-62.  That was a legal conclusion that neither this Court nor the Defendants can escape, and it forecloses each of the Defendants' arguments enumerated above.  *See* Feggins II, 535 B.R. at 875-76; *supra* note 6.

### 4.  The Court Must Apply *Crawford* Retroactively

The Eleventh Circuit decided Crawford on July 10, 2014, after the Defendants had already filed each of the proofs of claim at issue.  The Defendants argue that it would be inequitable to apply Crawford retroactively.  That argument is novel to this litigation, but was rejected by this Court in Holloway.  *See* 538 B.R. at 141-42.  The Court will briefly recap its Holloway analysis here.

17

The Defendants argue that this Court should follow the three-part test set out in <u>Chevron Oil Co. v. Huson</u>, 404 U.S. 97, 106-07 (1971).[14]  However, a court has no discretion to apply a new rule of law purely prospectively unless *it* is the court announcing the new rule or unless the court that did announce the new rule did not apply the new rule to the parties before it.[15]  *See* <u>Harper v. Va. Dep't of Taxation</u>, 509 U.S. 86, 97 (1993) (holding that when a court announcing a new legal rule applies the rule to the parties before it, all other courts must apply the rule retroactively); <u>James B. Beam Distilling Co. v. Georgia</u>, 501 U.S. 529, 540 (1991) (same); *cf.* <u>Glazner v. Glazner</u>, 347 F.3d 1212, 1216, 1220 (11th Cir. 2003) (en banc) (explaining that the court was not required to apply its legal rule retroactively because it was announcing a new legal rule).

This Court is not announcing a new legal rule; rather, it is applying the new legal rule that the Eleventh Circuit announced in <u>Crawford</u>.  *See* <u>Holloway</u>, 538 B.R. at 142.  The Eleventh Circuit applied its holding in <u>Crawford</u> to the parties before it because it vacated an order of dismissal and remanded the proceeding.  <u>Id.</u> (citing <u>Crawford</u>, 758 F.3d at 1262).  Under <u>Harper</u>, this Court lacks discretion to apply <u>Crawford</u> differently than the Eleventh Circuit did, and has no occasion to consider the <u>Chevron Oil</u> test.  <u>Holloway</u>, 538 B.R. at 142.

---

[14]  The Supreme Court held in <u>Chevron Oil</u> that a new rule of law should not be applied retroactively if it (1) is actually a new rule of law, (2) would be hindered in its operation by retroactive application, and (3) would be inequitable to apply retroactively.  <u>Chevron Oil Co.</u>, 404 U.S. at 106-07.

[15]  In <u>Holloway</u> this Court summarized the rule of retroactivity as follows: "Only a court announcing a new rule of law may choose not to apply that rule retroactively under <u>Chevron Oil</u>, and if it so chooses it must not apply the new rule to the litigants before it.  If a court is not announcing a new rule of law, but rather is following an existing rule, it must apply that rule retroactively if the court that announced the rule applied it to the litigants before it."  <u>Holloway</u>, 538 B.R. at 141.

18

### 5.  The Plaintiffs' FDCPA Claims are Not Barred by Res Judicata

The Defendants argue that the FDCPA claims of Chandler, Balcom, and Grant are barred by res judicata based on the Court's confirmation of their Chapter 13 plans.  "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or rejected the plan."  11 U.S.C. § 1327(a).  Based on § 1327(a), courts have considered an order confirming a Chapter 13 plan to be a final judgment on the merits.  *E.g.*, Hope v. Acorn Fin., Inc., 731 F.3d 1189, 1194-95 (11th Cir. 2013) (holding that a trustee's preference action to avoid an unperfected security interest was barred by res judicata based on plan confirmation when she was aware of the defect pre-petition).

The Defendants' res judicata defense fails as to Chandler.  He filed his FDCPA claims on July 29, 2014, well before the Court confirmed his plan on August 22, 2014.  (Case No. 14-01941, Docs. 28, 40).  Balcom and Grant are a closer call.  The Defendants filed stale proofs of claim in each of their bankruptcy cases on June 13, 2014, and Balcom and Grant objected to those claims the same day.  With those objections pending, the Court confirmed both of their Chapter 13 plans on July 3, 2014.  The Eleventh Circuit decided Crawford on July 10, 2014, and the Court sustained Balcom's and Grant's objections to the Defendants' claims on July 17, 2014.  Balcom and Grant filed their FDCPA claims on July 29, 2014.

 "To demonstrate that res judicata applies, the party asserting the bar must prove that (1) there was a prior judgment on the merits, (2) entered by a court of competent jurisdiction, (3) with substantial identities of the parties or their privies, (4) involving the same cause of action."  Baldwin v. Citigroup, Inc. (In re Baldwin), 307 B.R. 251, 260 (M.D. Ala. 2004).  "The res

19

judicata effect of confirming a bankruptcy plan 'is premised on the notion that the bankruptcy court has addressed in the confirmation plan and order only those issues that are properly within the scope of the confirmation hearing.  Issues that were not mature for decision and could not be appropriately resolved in either the confirmation hearing or in the order confirming the plan are not barred.'" Id. at 261 (quoting Russo v. Seidler (In re Seidler), 44 F.3d 945, 948 (11th Cir. 1995)).  "Facts related to the criteria [set forth] in [§§ 1322 and 1325 of the Bankruptcy Code] are the only facts that are of necessity at issue when a bankruptcy court confirms a Chapter 13 plan." Id.  "In assessing the claim preclusion impact of the confirmation of a chapter 13 plan, if an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect." Id.

For several reasons the Court holds that res judicata does not apply to Balcom's and Grant's FDCPA claims.  First, the Court considered only the merits of their Chapter 13 plans under §§ 1322 and 1325 when it confirmed their plans, and potential FDCPA claims fell outside the Court's scope of consideration.[16] Cf. id. at 262-63 (discussing differences between Chapter 11 confirmation and Chapter 13 confirmation, noting that the scope of germane issues in the latter is extremely limited).  Second, the Court had no authority when it confirmed Balcom's and Grant's plans to enter a final order on their FDCPA claims because the claims are non-core and the Defendants had not consented to this Court's adjudication of them at that time. Supra Part

---

[16] The confirmation hearing may not be held earlier than 20 days nor later than 45 days after the meeting of creditors under 11 U.S.C. § 1324(b), yet a proof of claim may be filed up to 90 days after the meeting of creditors.  FED. R. BANKR. P. 3002(c).  In addition, an objection to a proof of claim may be filed at any time.  FED. R. BANKR. P. 3007.  Examination of these provisions shows that the claims allowance process and plan confirmation process work largely independently of one another.  It necessarily follows that a non-core, non-bankruptcy claim triggered by a proof of claim would be even more divorced from the plan confirmation process.

II(A); *see also* <u>Stern v. Marshall</u>, 131 S. Ct. at 2594, 2616-18 (2011) (holding that a creditor's filing of a proof of claim did not vest the bankruptcy court with authority to adjudicate the debtor's state law compulsory counterclaim because a ruling on the proof of claim would not have determined the counterclaim).  Neither the Court's ruling on Balcom's and Grant's objections to the Defendants' proofs of claim, nor the Court's orders of confirmation, would have decided the merits of the FDCPA claims.  Third, the Eleventh Circuit decided <u>Crawford</u> after the plans were confirmed, meaning that the controlling authority at the time of the Court's confirmation orders held that Balcom and Grant had no FDCPA claims.[17]  Fourth, even if the Court could have somehow decided the FDCPA claims at plan confirmation, Balcom and Grant had already objected to the Defendants' proofs of claim prior to confirmation.

The Defendants direct the Court's attention to <u>Robinson v. eCast Settlement Corp.</u>, 14-cv-8277, Doc. 60 (N.D. Ill. Apr. 27, 2015), *appeal docketed* 15-2082 (7th Cir. May 20, 2015), but the Court finds that case to be at odds with <u>Baldwin</u>.  Also, the <u>Robinson</u> court partly based its decision on the "risk" of "'creating an incentive for debtors to enrich themselves at the expense of their creditors . . . [by] refrain[ing] from pursuing claims for monetary damages until after a plan has been confirmed in order to obtain additional post-plan assets that would not be subject to distribution in bankruptcy.'" <u>Robinson</u>, 14-cv-8277, Doc. 60, *4 (quoting <u>Covert v. LVNV Funding, LLC</u>, 779 F.3d 242, 248-49 (4th Cir. 2015)) (brackets and ellipsis in original); *see also*

---

[17]  *See* <u>Crawford v. LVNV Funding, LLC</u>, 2013 WL 1947616 (M.D. Ala. May 9, 2013), *rev'd* 758 F.3d 1254 (11th Cir. 2014); <u>McMillen v. Syndicated Office Sys., Inc.</u>, 440 B.R. 907 (Bankr. N.D. Ga. 2010); <u>Simpson v. PRA Receivables Mgmt., LLC (In re Simpson)</u>, 2008 WL 4216317 (Bankr. S.D. Ala. Aug. 29, 2008); <u>Cooper v. Litton Loan Servicing (In re Cooper)</u>, 253 B.R. 286 (Bankr. N.D. Fla. 2000); <u>Williams v. Asset Acceptance, LLC (In re Williams)</u>, 392 B.R. 882 (Bankr. M.D. Fla. 2008).

21

11 U.S.C. § 1327(b) and (c).[18]  The Robinson and Covert courts were concerned that to hold

otherwise would undermine the core bankruptcy purpose of "'collect[ing] all of the debtor's

assets for equitable distribution amongst creditors.'" Robinson, 14-cv-8277, Doc. 60, *4 (quoting

Covert, 779 F.3d at 248) (brackets added).

Those concerns are understandable in the abstract but are not a problem here.  Under the

terms of Balcom's and Grant's plans, any proceeds they recover from their FDCPA claims will

be paid into their estates for the benefit of their unsecured creditors.  Therefore, applying res

judicata in this instance would actually frustrate the core purpose of equitable distribution to

creditors, all while encouraging debt collectors like the Defendants to continue gaming the

system by filing their meretricious claims at the expense of those same creditors.

In short, none of the arguments in the Defendants' Rule 52 motions have merit.  The

Defendants' motions for judgment based on partial findings of fact and conclusions of law are

denied.

### III.  DAMAGES

Having determined the Defendants' liability and disposing of their legal defenses, the

Court turns to the question of damages.  None of the Plaintiffs claim any actual damages

stemming from the Defendants' FDCPA violations, but the FDCPA also provides for statutory

damages of up to $1,000 in individual cases, plus the costs of the actions and reasonable

attorney's fees. 15 U.S.C. §§ 1692k(a)(2)(A) and 1692k(a)(3).  When determining the amount of

liability, the Court must consider "the frequency and persistence of noncompliance by the debt

---

[18]  Except as provided in a Chapter 13 plan or confirmation order, plan confirmation vests
all property of the estate in the debtor and is free and clear of any claim or interest of any creditor
provided for by the plan.  11 U.S.C. § 1327(b)-(c).

collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional[.]" 15 U.S.C. § 1692k(b)(1).

The Court concludes that the maximum statutory award of $1,000 to each of the Plaintiffs is appropriate.  The Defendants testified that it is their policy to file proofs of claim on time-barred debt, and attorneys Gil and Stanfield testified that they frequently find it necessary to object to the Defendants' proofs of claim due to their unenforceability.  Moreover, the Court sees first-hand in its bankruptcy cases and adversary proceedings that the Defendants frequently and habitually file stale claims.  The Court finds the nature of the Defendants' violations to be egregious.  The Defendants knowingly and intentionally file unenforceable and objectionable claims that have no valid basis for distribution in the hope that they are overlooked by the debtor, the trustee, and the Court.  Their activity harms other more deserving creditors and damages the integrity of the Court.  Even if the Defendants did not intend to violate the FDCPA, they have engaged in a "measured and calculated" circumvention of the policies driving the FDCPA and the Bankruptcy Code.  *See* Edwards v. Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008), *aff'd* 584 F.3d 1350 (11th Cir. 2009) (imposing the maximum statutory fee against a debt collector whose company policy made "violating the FDCPA an ordinary course of business").

Therefore, the Court awards each Plaintiff $1,000 in statutory damages ($5,000 total) under 15 U.S.C. § 1692k(a)(2)(A), plus the Plaintiffs' costs of their actions and their

attorney's fees under 15 U.S.C. § 1692k(a)(3).  The Court will enter separate orders consistent

with this opinion.

      Done this 20th  day of November, 2015.

               United States Bankruptcy Judge

c: Nicholas H. Wooten, Attorney for Plaintiff
   Neal D. Moore III, Attorney for Defendants